## Pacewicz Liquor License Case.

124

Argued March 3, 1943. Before KELLER, P. J., BALD-RIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Paul R. Selecky,* for appellant.

*Peter P. Jurchak,* Special Deputy Attorney General, with him *James H. Duff,* Attorney General, and *Horace A. Segelbaum,* Deputy Attorney General, for appellee.

OPINION BY KELLER, P. J., April 13, 1943:

The Liquor Control Board issued its citation to

Stanley Pacewicz to show cause why the restaurant liquor license issued to him for premises 131 Main Street, Luzerne, Luzerne County, should not be revoked.

A hearing was had before an examiner appointed by the board on June 18, 1942, at which time evidence was produced that the licensee himself, as well as his employees, had sold intoxicating liquors on said premises on Sunday, April 12, 1942, and Sunday, April 19, 1942, contrary to law (Section 411, Pennsylvania Liquor Control Act; Act of February 26, 1855, P. L. 53) and had permitted dancing on the licensed premises on days and during hours when the sale of alcoholic beverages was prohibited, contrary to a regulation of the board (Section 202, Pennsylvania Liquor Control Act).

Being satisfied from all the evidence adduced at the hearing that the licensee had violated the law prohibiting the sale of intoxicating liquors on Sunday and the regulation above referred to, the board revoked the license.

The licensee appealed to the Court of Quarter Sessions of Luzerne County, which, after hearing, sustained the findings and order of the Liquor Control Board and dismissed the appeal. Judge APONICK agreed with the findings as to the violations charged against the licensee, but dissented from the majority of the court in sustaining the revocation of the license. He would have suspended the license for thirty days.

The licensee has appealed to this court. The proceeding is based on section 410 of the Pennsylvania Liquor Control Act of November 29, 1933, (P. L. 15, Special Session 1933-34) as amended by the Acts of July 18, 1935, P. L. 1246, June 16, 1937, P. L. 1762 and July 24, 1941, P. L. 483. No right of appeal is specifically given a licensee from an order of the court of quarter sessions *revoking* or *suspending* his license; but there is no prohibition of such an appeal, as ap-

pears in section 404 relative to the action of said court in *granting* or *refusing* a license. The appeal is, therefore, "in the nature of a certiorari, and our duty is to determine—the *jurisdiction* of the court being clear and the *regularity* of the proceedings not questioned— whether the court below abused its discretion or committed an error of law": *Martin's Grill, Inc. Liquor License Case,* 149 Pa. Superior Ct. 185, 186-7, 27 A. 2d 293; *Com. v. Hildebrand,* 139 Pa. Superior Ct. 304, 308, 11 A. 2d 688. We are of opinion that the court below did not abuse its discretion nor commit an error of law.

Section 410, as amended in 1937, provides, inter alia, that the board, if satisfied, after hearing upon a citation issued to a licensee to show cause why his license should not be revoked, that he has violated any provisions of said act or any law of the Commonwealth relating to liquors, alcohol or malt or brewed beverages, or any regulation of the board, adopted pursuant to such laws, etc., shall immediately suspend or revoke the license. Thereupon the licensee "shall have the right to appeal to the court of quarter sessions in the same manner as herein provided [sec. 404] for appeals from refusals to grant licenses."

Referring to section 404, we find that on appeals from the refusal of the board to grant licenses, the applicant may appeal within twenty days from the date of refusal to the court of quarter sessions of the county. "Such appeal shall be upon petition of the applicant, who shall serve a copy thereof upon the board, whereupon a hearing shall be held upon the petition by the court upon ten days' notice to the board, which shall be represented in the proceeding by the Department of Justice. The court shall hear the application de novo at such time as it shall fix, of which notice shall be given to the board. *The court shall either sustain the refusal of the board or order the issuance of the license",* (Italics supplied).

Following the procedure thus prescribed, a licensee whose license has been revoked may, within twenty days, appeal to the court of quarter sessions by petition filed in said court. The court, thereupon, shall fix a time for a hearing, of which ten days' notice shall be given the board and the Department of Justice. The court shall hear the matter de novo and sustain or reverse the board according as it finds the facts upon such hearing. If it finds the facts in accordance with the findings of the board, it sustains the action of the board. "If there is a conflict in the evidence the court may make different findings than those of the board, sustain or reverse the board and impose a less or more severe penalty": *Mami's Liquor License Case,* 144 Pa. Superior Ct. 285, 291, 19 A. 2d 549. This does not mean that the court, if it *sustains* the findings of the board, may impose a less or more severe penalty than the board; but only that if its findings of fact are different from the board's, it may change the penalty to accord with its findings. The hearing de novo is to determine the facts. If the facts so found are unchanged from the board's findings, the penalty imposed by the board stands. This was implicit in our action in the Mami case, supra, and in *Yatsko's Liquor License Case,* 149 Pa. Superior Ct. 97, 25 A. 2d 778, in both of which this court, speaking through Judge BALDRIGE, reversed the court below, which had sustained the findings of the board, but attempted to substitute a suspension of the license for the revocation imposed by the board; and in the Mami case usurped the prerogative given the board alone, in case of a suspension of the license by it, of accepting from the licensee an offer, in compromise, of ten dollars a day for each day of suspension.

The legislature, in committing, by the amendment of 1937, the original power of revocation and suspension to the Liquor Control Board, instead of to the several courts of quarter sessions, was, no doubt, moved

by the laudable desire to have one body, the board, pass upon those matters and impose the penalties for violations, thus securing a reasonable uniformity of action, rather than have sixty-seven separate jurisdictions impose them according to the varying ideas of the different judges. We see no other compelling reason for the change. Of course, if the court, as a fact-finding body, disagrees with the findings of fact of the board, it must have the authority to change the penalty, if any, to fit the violation thus found. For example, if the court below had found no violation of the law against selling intoxicating liquors on Sunday but only a violation of the regulation of the board relating to dancing, it might very properly have reduced the penalty to suspension instead of revocation.

We find no undue harshness in the revocation of a license under the circumstances in this case.

Every such licensee is a privileged person. He holds a special right or immunity granted to him that is not given to the public generally. In fact, since the Act of June 24, 1939, P. L. 806, the number of new licenses is so limited that not more than one license can be granted for every thousand inhabitants of the respective city, borough or township. But he holds it only conditionally. While he has it he must obey the law. He knows that if he violates the law he may lose his license. The limitation of the Act of 1939 was imposed to curb violations of the law. If no such limitation existed there might be so many licenses that the licensee could not make a living if he kept within the law.

For many, many years it has been unlawful in this Commonwealth for a licensee to sell intoxicating liquors to minors, to persons visibly intoxicated, or on Sunday. Those were the violations most common in pre-prohibition days and they were influential causes in bringing about the experiment of Prohibition. Such

violations of the law are just as harmful, both to the public and to law-abiding licensees, now as they were then; and it was proper that the Liquor Control Board should have come to a realization of the fact that they must be stopped and that the most effective way of doing it is to revoke the license. [1]

Order affirmed at the costs of the appellant.

---

[1] See, inter alia, *Yatsko's Liquor License Case,* 149 Pa. Superior Ct. 97, 25 A. 2d 778; *Askounes' Liquor License Case,* 144 Pa. Superior Ct. 293, 19 A. 2d 846; *Mami's Liquor License Case,* 144 Pa. Superior Ct. 285, 19 A. 2d 549; *Com. v. Miele,* 140 Pa. Superior Ct. 313, 14 A. 2d 337; *Com. v. Coldren,* 140 Pa. Superior Ct. 321, 14 A. 2d 340; *Com. v. Hildebrand,* 139 Pa. Superior Ct. 304, 11 A. 2d 688; *Easton's Liquor License Case,* 142 Pa. Superior Ct. 49, 15 A. 2d 480; *Com. v. Lyons,* 142 Pa. Superior Ct. 54, 15 A. 2d 851; *Penelope Club Liquor License Case,* 136 Pa. Superior Ct. 505, 7 A. 2d 558; *Com. v. Mahoningtown Ry. Men's Club,* 140 Pa. Superior Ct. 413, 416, 14 A. 2d 356.