## Philadelphia Labor's Non-Partisan League Club's Application for Incorporation.

466

Argued December 1, 1937.  Before SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Gilbert J. Kraus,* of *Kraus & Weyl,* with him *Jerome L. Markovitz* and *H. J. Seman,* for appellants.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1938:
This appeal from the refusal to grant a charter is in the nature of a certiorari, and the question is whether the court below abused its discretion: *Appeal of Vaux, Executor,* 109 Pa. 497; *In re Garrett-Williamson Lodge,* 239 Pa. 474, 86 A. 1072; *Curran Foundation Charter,* 297 Pa. 272, 146 A. 908.

Appellants and others filed in the court below articles of incorporation to create a corporation under the provisions of the Non-Profit Corporation Law of May 5, 1933, P. L. 289, as amended, 15 PS Sec. 2851-1, to

be known as Philadelphia Labor's Non-Partisan League Club.

The purposes of the proposed corporation are thus set forth in the articles: "The proposed corporation is being formed for the purpose of uniting its members in an organization to encourage and promote acquaintanceship and understanding among its members, and to enjoy the interchange of social, civic and political ideas, to promote a better understanding of the political and social phases of citizenship and to otherwise enjoy social intercourse among its members."

Upon presentation of the application, it was referred by the court to a master who held a hearing and took testimony from those interested in the grant of the charter. The master filed his report and recommended the charter be granted. Thereafter without any further hearing the court in an opinion disapproved the report of the master and dismissed the application. Exceptions were filed by the applicants to the opinion and the order.

In its opinion the court stated it had been testified before the master that the proposed corporation intended to have ten thousand members, which prompted the court to have an independent investigation made. Accordingly the judge asked for a report from the police department of Philadelphia. The opinion recites that this report disclosed that a number of the incorporators have police records, that one of them had been arrested in Chicago during a strike charged with inciting to riot, another had been arrested charged with illegal picketing and arrested again for disorderly conduct during an election, a third had been arrested eight times on various charges and is a constant source of trouble to the police, and the proposed president of the organization is an associate of racketeers and gunmen and of Chicago gangsters. The court concluded the incorporators and the proposed president are undesirable citizens and not the type of men who should be vested

with power to guide or influence the interests and purposes of ten thousand persons and that their social status would not be improved by reason of their membership in the proposed corporation. The court also stated that in view of what is heretofore recited, the purposes set forth in the application are not the bona fide intentions of the organization if a charter was granted, but such alleged purpose could be used as a cloak to carry on activities in other fields. The opinion goes on to say that if a charter should be granted, the corporation could have no such power as set forth in its articles, to organize and grant the same privileges conferred upon it to other subordinate organizations with a separate set up of officers, holding that this would be a usurpation of the power of the courts where such authority is alone vested. Finally, the court determined that the granting of a charter to such an organization is against public policy.

In reviewing the court's action, the difficulty we see is that it did not give the applicants an opportunity to be heard, even after they had filed exceptions, but refused them a charter on the basis of the police report, received after the testimony had been taken before the master. At least the applicants should have the chance to show that those matters alleged against them are untrue or mistaken or susceptible of another interpretation. In *Franklin's Appeal,* 163 Pa. 1, 29 A. 912, the judge upon his own motion without a hearing of any of the parties to be affected and upon private inquiries, made what he termed an adjudication of the office costs in certain criminal cases. We declared this action improper because of a failure to hear the parties concerned. We applied the same fundamental principle in *Stitzel's Est.,* 221 Pa. 227, 70 A. 749. In *Erie City v. Public Service Com.,* 278 Pa. 512, 123 A. 471, we pointed out the impropriety of decision based on reports not offered in evidence made by persons who were not subject to cross-examination. To the same effect are

*Phila. Rapid Transit Co. v. Public Service Com.,* 78
Pa. Super. Ct. 593; *Weymers v. Weymers,* 81 Pa.
Super. Ct. 432, and *Cage v. Public Service Com.,* 125
Pa. Super. Ct. 330, 189 A. 896.

While the application for a charter may not be subject to exactly the same rules as some other judicial proceedings, it is subject to the fundamental one that persons before a court shall not be condemned by a judge's finding without being given an opportunity to be heard.

The duty of the court is somewhat different in passing upon charter applications laid before it from what it is in some other matters, because it is required by the law to certify that the purpose or purposes given in the articles are lawful and not injurious to the community. The applicants must satisfy the court as to the propriety of its certificate, "otherwise", in the language of the act "the court shall refuse the application." It should always be borne in mind that in charter applications the applicants are asking the court for a special privilege as to the propriety of granting which, its conscience must be satisfied. In *Deutsch-Amerikanischer Volksfest-Verein,* 200 Pa. 143, 145, 49 A. 949, we said: "The court undoubtedly may and should look into the nature of the proposed social enjoyment, to see that it is 'lawful and not injurious to the community.' "

In no event can the articles be approved in their present form because they do not comport with the act of assembly. All other questions out of the way, to receive sanction they will have to be amended. They set forth: "The proposed corporation will have the power to establish units, branches, clubs or chapters in various sections of the City of Philadelphia. The Board of Directors shall have the authority to establish and terminate such units, branches, clubs or chapters, but each unit, branch, club or chapter may be a local self-governing organization, a part, however, of the proposed Philadelphia Labor's Non-Partisan League Club and

subject, moreover, to these Articles of Incorporation, the By-laws and any amendments thereto, and enjoying the benefits and advantages of the Non-Profit Corporation Law of 1933."

There is no warrant in the law for such a provision in the charter. Section 305 of the act (15 PS Sec. 2851-305) under the subhead "Members of Nonprofit Corporations Grouped in Local Units" provides: "The articles and by-laws of a nonprofit corporation may provide that the members of the corporation, and those who thereafter become members, shall be grouped in local units formed upon the basis of territorial area, or such other basis as may be determined in the articles or by-laws, *for the purpose of election of delegates or representatives to represent the members of such local units at any annual or special meeting of such corporation.* The articles or by-laws may provide the territorial limits or other basis from or upon which each local unit is drawn or formed, to do all things necessary to insure the representation of the local unit at meetings of the corporation, and to provide the basis of representation and number of delegates to which the local unit is entitled, but each local unit shall be entitled to at least one delegate, and a delegate or delegates representing a local unit shall not have a greater number of votes than the total membership of the local unit. *The local units* designated by the articles or by-laws of any such corporation *may be incorporated under the laws of the Commonwealth* by the members thereof, and shall have power to do all things necessary to give effect to this section." The language of the articles is a wide departure from this section of the act and that of the by-laws, which need not be quoted, is even wider.

The order is reversed and the record is remitted to the court below for such further proceedings as shall be taken.