## Krassen-Luber Family Circle Foundation

S. *Frank Laveson* and *Joseph Blank*, for applicants.

CARROLL, J., February 21, 1950.—In this case we have before us a petition for the grant of articles of incorporation of a nonprofit corporation under the Nonprofit Corporation Law of May 5, 1933, P. L. 289, the applicants being members of the families of petitioners. Following its filing in court and after the requirements of the act of assembly had been complied with, we referred the application to a master for the purpose of taking testimony and making a report to the court. Subsequently, the master held a meeting and filed a report in which, without any specific findings, he expressed the opinion that the corporation was organized for a lawful purpose, was not likely to be injurious to the community and recommended that the prayer of the petition be granted.

The object of the corporation, as stated in the application, is "for the purpose of giving financial assistance to relieve the needy and distressed, and to promote closer fraternal spirit and to cultivate social relations among the members, and to receive voluntary donations, bequests and contributions".

A summary of the testimony taken before the master establishes these pertinent facts: That the members are of family groups and have been so organized for 15 years; that contributions have been, and are to be, voluntary and in no stated amounts; that the original organization was for the purpose of assisting needy members of the family and outsiders, without regard to race, color or creed; that, prior to the filing of the petition, a contribution of $100 had been made to an unnamed member of the family who was ill and that this amount had been furnished by various members of the corporation; that there were other unrecorded cases requiring assistance to which the members made contributions; that the corporation was titled in order to honor "two very great men;" that there was no bank account; that one of the members had in his possession a check, dated July 26, 1949, from one A. Krasne, neither an incorporator, director, nor officer, but a member of the group, in the amount of $1,000, which had not been deposited or an account opened as of the date of the meeting before the master; that it was the intention to open an account in the Land Title Bank and Trust Company of Philadelphia after the charter had been granted.

It was on the basis of this testimony that the master concluded that the application came within the scope of the provisions of the Act of May 5, 1933, P. L. 289.

After consideration of the entire record, being of the opinion that the testimony was insufficient in law to sustain the recommendation of the master, we determined to disapprove the master's report and to dismiss the petition. Before doing so, however, counsel for petitioner was interviewed and given opportunity to present any further evidence he might have had in support of his petition. He stated that he had no additional testimony but felt that what he had was sufficient and, without any suggestion or inquiry from the

court, volunteered the statement that the Federal Government had recognized this sort of family corporation as a charity and that the purpose of the corporation was not only to assist needy members of the corporation, and outsiders if agreed upon, but also to enable members of the corporation to make contributions which were proper deductions as charity from income returns to the Federal Government.

On November 22, 1949, we entered our order disapproving the master's report and dismissing the exception, recording our reasons in a brief decree filed at the same time. Thereafter, new counsel appeared and filed exceptions to our final decree, upon which we are required to take no action. However, we granted a reargument, during the course of which it was stated by both counsel that the primary purpose was to perpetuate the family name. Subsequently, we permitted a further additional argument before the court en banc and, it appearing to the court that there was no reason to reconsider our determination heretofore made, we declined to reverse our decree, approve the petition and grant the charter.

Our review of the testimony leads us to the conclusion that the object of the organization was to set up and acquire a fund which would be used for the purpose of giving financial assistance to the members of the Krassen-Luber family, who, in turn, were to be members of the organization. This fact is one that should have been found by the master, who based his report solely upon the conclusion that the applicants complied with the technical requirements of the act. In failing to find this fact, the master thereby overlooked the substantial purposes and the prohibitions of the Act of May 5, 1933, P. L. 289, which is clear in defining what is meant by a nonprofit corporation. Article 1, sec. 1 of this act contains this definition:

" 'Nonprofit Corporation' means a corporation organized for a purpose or purposes not involving pecuniary profit, incidental or otherwise, to its members."

An analysis of this definition shows that the limitation against obtaining pecuniary profit is directed not only against the corporation as such, but is also directed against its members. If it is intended that any of the members of the association, irrespective of whether it is because of need or other adversity, are to receive benefits from the funds collected, contributed, or obtained by the corporation, the association pro tanto is a profitable one. If its members can obtain, even incidentally, a pecuniary profit by reason of their corporate organization, the creation of such a corporation is in defiance of the plain language of the Nonprofit Corporation Law of 1933.

Providing for the needs or welfare of members of one's family, when they are in distress, is not an act of charity. Contributions for such a purpose are at all times a moral duty and may even become a legal obligation enforcible through the processes of our laws. It follows that an organization to create a fund for such a purpose is not a charity. The form of a charitable foundation cannot be twisted into a method of obtaining financial benefits for its members, even in times of need or distress. Nor can the many special advantages which the laws of our municipal, State and Federal Governments bestow on corporations of this class be obtained by those who would both give to and receive from the same fund. The fact that the corporation could give to others outside the family circle, even to the point of not discriminating between race, color, or creed, does not alter the real purpose, which, from the testimony in this case, clearly is to provide for the needy and distressed of its members.

That petitioners have completely failed to show that, as an unincorporated organization, they ever gave relief to anyone other than members of the two families is a fact which casts grave doubt upon, if it does not wholly negate, the sincerity of the asserted purpose of the corporation to give assistance to outsiders. While the declaration of a purpose is easy to make, and, standing alone, is some evidence of its existence, positive acts in corroboration or contradiction of it are far more revelatory and convincing than the mere assertion of it.

Under our economic structure the needs of individuals are provided for through profitable work from which it is usual to set aside a fund for the emergencies of the future. When such provision is made for one's own self and members of one's own family, it is not a nonprofit enterprise but the normal functioning within our economic structure. Members of a family combining for that purpose constitute a coöperative association. Such an association is not within the purview of this act.

Originally, certain beneficial organizations were permitted to be incorporated as first class corporations. The Corporation Act of April 29, 1874, P. L. 73, sec. 2, par 9, permitted such incorporations for "The maintenance of a society for beneficial or protective purposes to its members from funds collected therein". However, our legislature has seen fit to place such associations outside of this act. In section 4, relating to the scope of the act, there is this statement:

"This Act does not relate to, does not affect, and does not apply to . . . (3) Any corporation whatsoever organized for any purpose or purposes involving pecuniary profit to its members or shareholders."

Clearly, the fundamental purpose of this corporation involves such a profit.

Counsel for the applicant has contended that the judge before whom this matter was originally argued erred in referring in his decree to the fact that an obvious purpose for seeking such an incorporation was to enable the members of this family "to evade legitimate personal income taxes on such sums as they might desire to give in aid of needy members of the family". Counsel refers to a recent opinion of our Supreme Court in Philadelphia Labor's Non-Partisan League Club's Application for Incorporation, 328 Pa. 465. However, one can readily distinguish between the impropriety of reaching a decision upon facts which are not made a part of the record, as was done in the case cited, and the duty of the court to take judicial notice of the operation of the tax laws, which this court is sworn to uphold. For a court to grant a charter obviously intended to be used in an effort to circumvent a law by giving a false appearance to a situation, would amount to lending its aid to the accomplishment of that effort. This was never the intention of the law governing corporations of the first class. The duty of the court to prevent such an unwholesome result is implicit in the requirement that it determine whether the proposed corporation is against the public interest. The use of a corporation as a means of evading legitimate taxes is injurious to the community, and when the purpose to so use it appears, it becomes the court's duty to refuse the application for a charter in exercise of a sound discretion.

## Decree

Being of opinion that it is manifest, not only from the testimony, but also from the very fair and candid acknowledgment of counsel at the argument, that the true purpose of petitioners in seeking incorporation in this case is to enable them to evade legitimate personal income taxes on such sums as they might desire

to give in aid of needy members of the family, we are unable to agree with the master's conclusion that the purpose of the proposed corporation is legitimate and not against the public interest. It was not the aim of the legislature, in enacting the corporation laws, to provide the means for its individual citizens to misuse those laws as a mere device for circumventing tax laws, and for depriving the Federal Government of revenue to which it is justly entitled.

Accordingly, the master's report is disapproved, the charter is refused and the petition therefor is dismissed.